**CHRISTINE KRUSE, Plaintiff,**

**v.**

**AMERICAN SAMOA GOVERNMENT for the OFFICE OF SAMOAN AFFAIRS, SOTOA SAVALI, OFFICE OF TERRITORIAL REGISTRAR, and SALOTE SCHUSTER, Defendant.**

High Court of American Samoa
Trial Division

MT No. 08-01

April 9, 2002

Counsel: For Plaintiff, Marie A. Lafaele and Charles V. Ala`ilima
For Defendants, Marcellus T. Uiagalelei, Asst. Atty General

Before RICHMOND, Associate Justice, LOGOAI, Chief Associate Judge, ATIULAGI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

## OPINION AND ORDER

Plaintiff Christine Kruse ("Kruse") brought this action to enable her participation as a claimant to the "Fanene" *matai* title of the Village of Nu`uuli. Kruse contends that the Territorial Registrar and Secretary of Samoan Affairs, as agents officiating on behalf of defendant American Samoa Government ("ASG"), denied her constitutional right to compete for the title. Both parties moved for summary judgment, and the hearing was scheduled on February 19, 2002.

After this action was filed, concomitant claims to the "Fanene" title were submitted for judicial determination in the now pending action, *In re Matai Title "Fanene"*, MT No. 11-01. On January 28, 2002, at the hearing on Kruse's motion to intervene and stay proceedings in MT No. 11-01, we deferred acting on the motion pending the outcome of this action.

The essential facts are undisputed and the legal issues are primary in this action. It can be, and should be, expeditiously decided to avoid undue delay of the proceedings in MT No. 11-01. Thus, counsel were advised that the trial in this action, rather than a summary judgment hearing, would proceed on February 19, 2002, and that the parties should present witnesses and other evidence to confirm and supplement the facts set forth in the affidavits supporting the summary judgment motions. The trial began on February 19th and concluded on February 21, 2002. All counsel were present.

### Factual Background

Kruse is a naturalized citizen of the United States and has been a resident of Nu'uuli for over 10 years. She was born in [Western] Samoa in 1942 where her parents then resided. Her father was a citizen of Samoa and her mother was a United States National born in American Samoa. Her mother was a member of the Fanene family. Kruse moved to American Samoa with her mother when she was approximately three years old. She has served the Fanene family from 1968 until the present time.

In early June of 2001, the Fanene family decided that a member of its Taffeta clan, to which Kruse is a member, would be the next holder of the vacant "Fanene" title leading the family. This clan nominated three people, including Kruse, as candidates. On June 6, 2001, one nominee, not Kruse, offered to register the *Fanene* title with the Territorial Registrar. In late June, 2001, Kruse and the third nominee filed counterclaims to register the title. A member of another family clan also filed a counterclaim to the title.

The Territorial Registrar then forwarded the names of three of the claimants, excluding Kruse, to the Secretary of Samoan Affairs for dispute resolution proceedings, pursuant to the mandate of A.S.C.A. § 43.0302(a). The Territorial Registrar informed Kruse that she was excluded from the list because of the birthplace requirement in A.S.C.A. § 1.0403(b). Though the Secretary of Samoan Affairs was advised by Kruse of her disagreement with the omission of her name, the Secretary proceeded with the dispute resolution process and, on October 22, 2001, issued a certificate of irreconcilable dispute. The "Fanene" title controversy was then referred to this court for judicial determination and is pending as MT No. 11-01.

### Discussion

Kruse disputes the constitutionality of A.S.C.A. § 1.0403(b). This statute prescribes one of the necessary qualifications of eligibility to succeed to a *matai* title as follows:

(b) He must have been born on American soil; provided that a person born of parents who were inhabitants of American Samoa, but temporarily residing outside of American Samoa or engaged in foreign travel, at the date of birth of such child, may, for the purposes of this subsection, be considered as having been born on American soil if:

(1) while actually residing in American Samoa, and at any time within one year after he attains the age of 18 years, he files with the territorial registrar a renunciation, under oath, of allegiance to the country of his birth, or

(2) he has resided in American Samoa for a continuous period of not less than 10 years prior to the time of filing his application to be registered as the holder of a matai title.

Kruse challenges the statute on three fronts: (a) as violating a fundamental right, (b) as discriminatory against individuals on the basis of national origin, and (c) as violating the duty of the Legislature of American Samoa to preserve *fa`a Samoa,* the Samoan way of life.[1]

■ Kruse correctly asserts that this Court has applied the standard developed under the equal protection clause of the 14th Amendment of the United States Constitution to a substantive due process challenge under Article I, Section 2 of the Revised Constitution of American Samoa. *See generally Am. Samoa Gov't v. Macomber*, 8 A.S.R.2d 182 (Trial Div. 1988). Kruse argues that holding a *matai* title is a fundamental property right and aspiring to hold a *matai* title is a fundamental liberty right in the Samoan culture entitled to constitutional protection. Basic rights at the heart and soul of the American way of life, having an explicit or implicit constitutional foundation, are fundamental and are entitled to have laws impacting them strictly scrutinized. *See, e.g., Plyer v. Doe*, 457 U.S. 202, 221 (1982); *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973).

■ The hierarchial *matai* title and communal land systems, along with the Samoan language, are pillars of *fa`a Samoa*. The holder of the *sa`o*

---

[1] Kruse also argues that if A.S.C.A. § 1.0403(b) is not constitutionally void, she still has an alternative remedy under the federal civil rights statutes, in particular 42 U.S.C. §§ 1981, 1983, and 1985. These statutes are expressly applicable to the territory. 42 U.S.C. § 1981. This Court has held, however, that if the particular right, privilege, or immunity at issue is not secured in the territory by the U.S. Constitution, the parallel remedy provided by the federal civil rights statutes is also unavailable. *Banks v. Am. Samoa Gov't,* 4 A.S.R.2d 113, 128 n.7 (Trial Div. 1987).

*matai* title heads the family, the key unit of Samoan society. The family ideal is a close-knit group of loyal and dedicated members, with a well-defined structure of lesser *matais*, overseen by the *sa'o*. The *sa'o* is entrusted with grave responsibilities for the protection and management of the family's communally owned lands, the single most important tangible family asset, and the family's affairs. *See Pen v. Lavata'i*, 25 A.S.R.2d 164, 167-69 (Land & Titles Div. 1994).

An individual does not hold the *matai* title of a family *sa'o* simply by birth as a blood member of the family. A *sa'o matai* title, or any other *matai* title for that matter, and the *matai* selection process are neither property rights nor privileges having constitutional origin, nor liberty rights of the same dimension. In most families, a *matai* title is traditionally granted to an individual by consensus of the family, usually based on blood connection with and service to the family. The recipient does not have the freedom to use the title as a personal possession, but rather must carry out the fiduciary duties of the position. *Pen v. Lavata'i*, 25 A.S.R.2d at 168.

To assign possession of a *matai* title status as a fundamental right would be akin to recognizing the status of an elected office as a fundamental right. It would even elevate a mere potentiality to the level of elemental standing for the person aspiring to hold the title. Neither a *matai* title nor the aspiration to attain the title is a property right, or any other constitutional right of fundamental importance, so to require strict scrutiny of A.S.C.A. § 1.0403(b).

We would still apply strict scrutiny in reviewing A.S.C.A. § 1.0403(b) if the law discriminated on the basis of national origin. However, this Court already decided this issue. *See, e.g., In re Matai Title "T'aulualo"*, 25 A.S.R.2d 155, 158 (Land & Titles Div. 1994). An individual born outside of American or American Samoan soil can still qualify as a candidate for a *matai* title as long as the parents were then *bona fide* inhabitants of American Samoa. *Id.* at 158 (even an individual who is not a U.S. national may qualify). Because A.S.C.A. § 1.0403(b) does not exclude individuals based on national origin, we will not apply the strict scrutiny test, but will instead apply the rational basis analysis to review A.S.C.A. § 1.0403(b). This means that the statute passes constitutional muster if it is rationally related to a legitimate territorial interest. *See, e.g., Heller v. Doe*, 509 U.S. 312, 319-20 (1993).

Kruse also argues that A.S.C.A. § 1.0403(b) violates the duty of the American Samoa Government or the Legislature of American Samoa to preserve *fa'a Samoa*. That duty is prescribed in various direct and indirect ways. *See* Cession of Tutuila and Aunu'u of April 17, 1900; AM. SAMOA REV. CONST. art. I, § 3 & art. II, §§ 1, 9; A.S.C.A. § 1.0202.

Her argument is premised on the concept that no traditional rule requires a potential *matai* to be born on American soil. If the law were subject to strict scrutiny, this argument might be enough. As the law need only be rationally related to a legitimate territorial purpose, Kruse must go further to succeed.

 Matai titles are of central importance in Samoan customs, and maintaining a proper selection process is important to preserve *fa`a Samoa*. However, Kruse fails to establish that the restriction of A.S.C.A. § 1.0403(b) is not rationally related to the very legitimate purpose of preserving Samoan culture. In fact, this statute works towards that very purpose.

Samoan culture is dynamic. The basic tenets of *matai* leadership and communal land ownership must stand tall and firm for the Samoan way of life to survive. However, this does not mean that the culture cannot endure after accommodating changes in custom. *Fa`a Samoa,* like all living cultures, finds constructive ways to adapt to the times and evolve. The fateful decisions leading the acceptance of political division of once unified Samoa and allegiance of American Samoans to the United States created a situation of adaptation as well the need to preserve *fa`a Samoa.* The new political identity would surely lead to changes in the *matai* system. The *matai* system today is not exactly the same as it was 100 years ago.

 The constitutional and statutory protections of *fa`a Samoa* do not prevent the Legislature of American Samoa from enacting and the Governor of American Samoa from approving rational laws designed to preserve changed attitudes and practices, including new ways of keeping *fa`a Samoa* in tune. Close identification with American Samoa as a qualification to hold a *matai* title was a logical and legitimate historical development. Clearly, the Legislature and Governor held the view that requiring a foreign born candidate for a *matai* title to have parents who retained American Samoa as their permanent home and were abroad for a transitory purpose was, and is, a rational way to ensure that a titleholder has close association with the territory. It is not the Court's function to second guess this legislative judgment. While there are other, and perhaps even better, ways that the Legislature and Governor might have chosen, and may yet choose, to achieve the objective of close attachment to the territory, the one selected rationally serves that purpose.

## Order

Because the statute is rationally related to the legitimate purpose of recognizing accepted criteria for the selection of a *matai*, in an effort to preserve *fa`a Samoa*, Kruse's challenge of the constitutionality of

323

A.S.C.A. § 1.0403(b) falls short. Her claim fails, and this action is dismissed. We will also deny Kruse's motion to intervene and stay proceedings in MT No. 11-01.

It is so ordered.